# EXHIBIT "A"

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

COVER SHEET

| Plaintiff(s) | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS<br>291 Greenlee Road<br>Pittsburgh, PA  15227 | **Case Number :**<br>GD - 16 - 11267<br><br>**Type of pleading :**<br>CIVIL ACTION MEDICAL<br>PROFESSIONAL LIABILITY ACTION<br><br>**Code and Classification :**  007<br><br>**Filed on behalf of**<br>PLAINTIFFS<br><br>(Name of the filing party) |

E-FILED

JUN 2 3 2016

CIVIL/FAMILY DIVISION
DEPT OF COURT RECORDS
ALLEGHENY COUNTY, PA.

Vs

**Defendant(s)**

GINA SUCATO, M.D.
c/o Children's Hospital of
Pittsburgh of UPMC
4401 Penn Avenue
Pittsburgh, PA 15224

CHILDREN'S HOSPITAL OF PITTSBURGH
OF UPMC
4401 Penn Avenue
Pittsburgh, PA 15224

UNIVERSITY OF PITTSBURGH
PHYSICIANS
200 Lothrop Street
Pittsburgh, PA 15213

UPMC HEALTH SYSTEM
200 Lothrop Street
Pittsburgh, PA 15213
SEE 2ND PAGE

☑ Counsel of Record

☐ Individual, If Pro Se

**Name, Address and Telephone Number :**

Thomas R. Kline, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA  19102
(215) 772-1000;

**Attorney's State ID :**  28895

**Attorney's Firm ID :**

[cover]

COVER SHEET 2

## DEFENDANTS CONTINUED

ESTHER M. NGARE, M.D.
c/o Hilltop Community Healthcare
151 Ruth Street
Pittsburgh, PA 15221

AMY G. NEVIN, M.D.
c/o Hilltop Community Healthcare
151 Ruth Street
Pittsburgh, PA 15221

TRINA PEDUZZI, M.D.
c/o Hilltop Community Healthcare
151 Ruth Street
Pittsburgh, PA 15221

HILLTOP COMMUNITY HEALTHCARE CENTER
151 Ruth Street
Pittsburgh, PA 15221

Defendants

**KLINE & SPECTER**
A Professional Corporation

By:  THOMAS R. KLINE, ESQUIRE
     DOMINIC C. GUERRINI, ESQUIRE
     MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com
dominic.guerrini@klinespecter.com
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (facsimile)

*Attorneys for Plaintiffs*

| | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS<br>291 Greenlee Road<br>Pittsburgh, PA 15227<br><br>        **Plaintiffs**<br><br>    v.<br><br>GINA SUCATO, M.D.<br>c/o Children's Hospital of Pittsburgh of UPMC<br>4401 Penn Avenue<br>Pittsburgh, PA 15224<br><br>CHILDREN'S HOSPITAL OF<br>PITTSBURGH OF UPMC<br>4401 Penn Avenue<br>Pittsburgh, PA 15224<br><br>UNIVERSITY OF PITTSBURGH<br>PHYSICIANS<br>200 Lothrop Street<br>Pittsburgh, PA 15213<br><br>UPMC HEALTH SYSTEM<br>200 Lothrop Street<br>Pittsburgh, PA 15213<br><br>ESTHER M. NGARE, M.D.<br>c/o Hilltop Community Healthcare<br>151 Ruth Street<br>Pittsburgh, PA 15221<br><br>  (Caption continued on following page) | COURT OF COMMON PLEAS<br>ALLEGHENY COUNTY<br><br><br>JURY TRIAL DEMANDED<br><br>NO.<br><br><br>CIVIL ACTION -<br>MEDICAL PROFESSIONAL<br>LIABILITY ACTION |

(Caption continued on following page)

1

AMY G. NEVIN, M.D.
c/o Hilltop Community Healthcare
151 Ruth Street
Pittsburgh, PA 15221

TRINA PEDUZZI, M.D.
c/o Hilltop Community Healthcare
151 Ruth Street
Pittsburgh, PA 15221

HILLTOP COMMUNITY HEALTHCARE
CENTER
151 Ruth Street
Pittsburgh, PA 15221

                                                    Defendants

## NOTICE TO DEFEND-CIVIL

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Room 920, City County Building
Pittsburgh, PA 15219
(412) 261-2088

### ADVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademes, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Room 920, City County Building
Pittsburgh, PA 15219
(412) 261-2088

## CIVIL ACTION COMPLAINT

Plaintiffs, Kendra Arista and Rachel Boris, by and through their attorneys, Kline and

Specter, a Professional Corporation, hereby demand damages of Defendants in a sum in excess

2

of the local arbitration limits, exclusive of interest, costs and damages for prejudgment delay, upon the causes of actions set forth below:

1.    Plaintiff, Kendra Arista [also referred to as "Kendra"] was born on August 2, 1994 and is a citizen and resident of the Commonwealth of Pennsylvania, residing therein at 291 Greenlee Road, Pittsburgh, Pennsylvania 15227.

2.    Plaintiff, Rachel Boris, Kendra Arista's mother, is a citizen and resident of the Commonwealth of Pennsylvania, residing therein at 291 Greenlee Road, Pittsburgh, Pennsylvania 15227.

3.    Defendant, Gina Sucato, M.D. ["Dr. Sucato"], was at all times relevant hereto, a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, practicing within the field of Pediatrics and/or Adolescent Medicine, with an office, medical practice, and place of business at, among other places, Children's Hospital of Pittsburgh of UPMC, 4401 Penn Avenue, Pittsburgh, Pennsylvania 15224. Plaintiffs are asserting a professional negligence claim against this defendant. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "A."

4.    Defendant, Children's Hospital of Pittsburgh of UPMC ["CHP"], was at all times relevant hereto, an institutional health care provider, health care facility, comprehensive provider of health care and health care services, and a hospital, duly licensed by, organized according to, and existing under the laws of the Commonwealth of Pennsylvania, and accredited and certified by the Joint Commission on the Accreditation of Healthcare Organizations. CHP is located at 4401 Penn Avenue, Pittsburgh, Pennsylvania 15224. Plaintiffs are asserting a professional liability claim against this defendant for the conduct of its agents, servants, and employees as

3

pleaded herein.  A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "B."

5.      Defendant, University of Pittsburgh Physicians ["UPP"], is a corporation or other jural entity, organized and existing under the laws of the Commonwealth of Pennsylvania, which at all times relevant hereto, owned and operated medical offices and/or was in the business of providing medical services, advice, diagnosis, and treatment with the place of business located at, among other places, 200 Lothrop Street, Pittsburgh, Pennsylvania 15213.  Plaintiffs are asserting a professional liability claim against this defendant for the conduct of its agents, servants, and employees as pleaded herein.  A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "C."

6.      Defendant, UPMC Health System ["UPMC"], is a corporation or other jural entity, organized and existing under the laws of the Commonwealth of Pennsylvania, which at all times relevant hereto, owned and operated hospitals and/or medical offices and/or was in the business of providing medical services, advice, diagnosis, and treatment with the place of business located at, among other places, 200 Lothrop Street, Pittsburgh, Pennsylvania 15213. Plaintiffs are asserting a professional liability claim against this defendant for the conduct of its agents, servants, and employees as pleaded herein.  A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "D."

7.      Defendant, Esther M. Ngare, M.D. ["Dr. Ngare"], was at all times relevant hereto, a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, practicing within the field of Family Medicine, with an office, medical practice, and place of business at, among other places, c/o Hilltop Community Healthcare, 151 Ruth Street, Pittsburgh,

4

Pennsylvania 15221. Plaintiffs are asserting a professional negligence claim against this defendant. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "E."

8.     Defendant, Amy G. Nevin, M.D. ["Dr. Nevin"], was at all times relevant hereto, a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, practicing within the field of Pediatrics, with an office, medical practice, and place of business at, among other places, c/o Hilltop Community Healthcare, 151 Ruth Street, Pittsburgh, Pennsylvania 15221. Plaintiffs are asserting a professional negligence claim against this defendant. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "F."

9.     Defendant, Trina Peduzzi, M.D. ["Dr. Peduzzi"], was at all times relevant hereto, a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, practicing within the field of Pediatrics, with an office, medical practice, and place of business at, among other places, c/o Hilltop Community Healthcare, 151 Ruth Street, Pittsburgh, Pennsylvania 15221. Plaintiffs are asserting a professional negligence claim against this defendant. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "G."

10.    Defendant, Hilltop Community Healthcare Center ["HCHC"], was at all times relevant hereto, the owner and operator of a multi-specialty group medical practice which provides medical staff for patient care, including Kendra Arista, which is organized according to, and existing under the laws of the Commonwealth of Pennsylvania with a place of business at, among other places, 151 Ruth Street, Pittsburgh, Pennsylvania 15221. Plaintiffs are asserting a professional liability claim against this defendant for the conduct of its agents, servants, and

5

employees as pleaded herein.   A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "H."

11.    At all times relevant hereto, Dr. Sucato acted in the capacity of Kendra Arista's physician and was the actual, apparent, or ostensible agent, servant, or employee of CHP, UPP, and/or UPMC and was acting within the scope of her professional duties for CHP, UPP, and/or UPMC while providing medical care and treatment to Kendra Arista.

12.    At all times relevant hereto, Dr. Ngare acted in the capacity of Kendra Arista's physician and was the actual, apparent, or ostensible agent, servant, or employee of HCHC and was acting within the scope of her professional duties for HCHC while providing medical care and treatment to Kendra Arista.

13.    At all times relevant hereto, Dr. Nevin acted in the capacity of Kendra Arista's physician and was the actual, apparent, or ostensible agent, servant, or employee of HCHC and was acting within the scope of her professional duties for HCHC while providing medical care and treatment to Kendra Arista.

14.    At all times relevant hereto, Dr. Peduzzi acted in the capacity of Kendra Arista's physician and was the actual, apparent, or ostensible agent, servant, or employee of HCHC and was acting within the scope of her professional duties for HCHC while providing medical care and treatment to Kendra Arista.

15.    The injuries of Kendra Arista were caused solely and exclusively by the negligence of Defendants and were due in no manner whatsoever to any act or failure to act on Plaintiffs' part.

16.    Venue is properly laid in Allegheny County pursuant to Pa. R. Civ. P. 1006.

6

17.     Under the local rules the amount in controversy exceeds the amount requiring arbitration.

<u>OPERATIVE FACTS</u>

18.     Plaintiff, Kendra Arista, was born on August 2, 1994.

19.     Plaintiff, Rachel Boris, is Kendra Arista's mother and until Kendra reached majority on August 2, 2012, was her parent and natural guardian.

20.     On June 30, 2011, at age 16, Kendra presented to Dr. Nevin at HCHC and complained of a three year history of secondary amenorrhea.

21.     On June 30, 2011, in response to Kendra's complaint of secondary amenorrhea, Dr. Nevin prescribed Provera 10mg to be taken for 10 days and advised Kendra and her mother that if Kendra did not have a withdrawal bleed following completion of the Provera, she would need to follow up at Magee for further evaluation.

22.     On June 30, 2011, Dr. Nevin did not document performing a breast exam on Kendra and failed to document whether Kendra had galactorrhea.

23.     On July 12, 2011, after Kendra failed to have a withdrawal bleed following completion of the Provera, a nurse at HCHC directed Kendra's mother to have Kendra seen at the CHP Adolescent Medicine Clinic.

24.     On September 27, 2011, at age 17, Kendra was evaluated and examined at the CHP Adolescent Medicine Clinic by Traci Kazmerski, M.D., a resident, and Dr. Sucato, an attending, for secondary amenorrhea.

25.     On September 27, 2011, neither Dr. Kazmerski nor Dr. Sucato documented performing a breast exam on Kendra and neither physician documented whether Kendra had galactorrhea.

26.     On September 27, 2011, Dr. Sucato had Kendra undergo lab work that was drawn that day to rule out hypothalamic dysfunction, pituitary dysfunction, or thyroid disease as the cause of Kendra's secondary amenorrhea.

27.     On September 27, 2011, Kendra's lab work at CHP revealed an elevated prolactin of 64.9ng/ml, representing hyperprolactinemia, a well-known cause of secondary amenorrhea related to pituitary dysfunction.

28.     On September 27, 2011, Kendra's lab work at CHP also revealed an elevated Sed Rate [ESR] of 48.

29.     On October 11, 2011, Dr. Peduzzi, Dr. Nevin's associate at HCHC, documented receipt of Dr. Sucato's office note from the CHP Adolescent Medicine Clinic.

30.     On October 28, 2011, Dr. Nevin reviewed Kendra's HCHC office chart.

31.     On November 15, 2011, Kendra was seen by Dr. Peduzzi at HCHC and Dr. Peduzzi documented that Kendra's prolactin was high, for which Dr. Peduzzi noted Kendra needed follow up at the CHP Adolescent Medicine Clinic "as soon as possible."

32.     On December 22, 2011, Kendra presented to HCHC and Dr. Nevin ordered labs that Kendra had drawn that day, including a repeat prolactin.

33.     On December 27, 2011, Dr. Peduzzi documented that Kendra's repeat prolactin level on 12/22/11 was elevated at 55.9ng/ml and Kendra had and elevated ESR, for which Dr. Peduzzi called the CHP Adolescent Medicine Clinic and spoke to Jonathan Fletcher, M.D.

34.     On December 27, 2011, Dr. Fletcher advised Dr. Peduzzi that Kendra's elevated prolactin of 55.9 was "not immediately concerning for a pituitary adenoma, but it should be followed," and recommended Kendra be seen in the CHP Adolescent Medicine Clinic.

35.     On December 30, 2011, Dr. Peduzzi documented that Kendra had an appointment

8

with Dr. Sucato at the CHP Adolescent Medicine Clinic on 2/8/12.

36.     On January 5, 2012, Dr. Sucato documented that she had received and reviewed Kendra's growth chart and suspected Kendra's secondary amenorrhea was due to weight loss.

37.     On February 8, 2012, Kendra was evaluated and examined Dr. Sucato at the CHP Adolescent Medicine Clinic and Dr. Sucato documented that she suspected Kendra's secondary amenorrhea was due to weight fluctuations and would repeat Kendra's prior abnormal lab studies and "provided those [labs] are all normal, will monitor and follow up in 3 months."

38.     On February 8, 2012, Dr. Sucato did not document performing a breast exam on Kendra and failed to document whether Kendra had galactorrhea.

39.     On February 8, 2012, Kendra's lab studies ordered by Dr. Sucato included an elevated prolactin level of 59.2 ng/ml and elevated ESR of 34.

40.     On February 8, 2012, Dr. Sucato advised Kendra and her mother that Kendra's secondary amenorrhea and elevated prolactin were the result of weight loss and psychosomatic illness and were not of concern.

41.     On February 8, 2012, Dr. Sucato referred Kendra to Southwestern Human Services for counseling.

42.     On February 10, 2012, Dr. Sucato documented that Kendra's labs were "stable."

43.     On February 14, 2012, Dr. Nevin and Dr. Peduzzi reviewed Kendra's HCHC chart, including the CHP Adolescent Medicine Clinic report from Dr. Sucato dated 2/8/12.

44.     On February 27, 2012, Jodi Pantis, on behalf of the CHP Adolescent Medicine Clinic, spoke to Kendra's mother by phone and informed her that Kendra's labs were heading in the right direction and confirmed that Kendra had an appointment to be seen for counseling.

45.     On March 2, 2012, Kendra was evaluated by Dr. Peduzzi at HCHC for swelling

of the eyelid, during which Dr. Peduzzi did not address or discuss Kendra's amenorrhea or elevated prolactin levels.

46.     On March 3, 2012, Kendra was seen for counseling at Southwestern Human Services.

47.     On September 4, 2013, at age 19, Dr. Ngare evaluated Kendra and performed a driver's license physical examination and documented that Kendra had a normal physical examination with normal vision and no contraindications to driving.

48.     On September 4, 2013, despite documenting that Kendra continued to complain of amenorrhea, Dr. Ngare did not evaluate or investigate Kendra's amenorrhea or history of elevated prolactin levels within the HCHC medical record.

49.     On September 4, 2013, Dr. Ngare did not document performing a breast exam on Kendra and failed to document whether Kendra had galactorrhea.

50.     On or about June 28, 2014, Kendra was a passenger in her mother's automobile in a parking lot when another car, while backing up, hit their car at a low rate of speed.

51.     On July 8-9, 2014, Kendra was seen in Jefferson Regional Medical Center's Emergency Department complaining of neck pain and severe numbness in her left upper extremity and stated that she may have hit her head in the recent car accident.

52.     On July 9, 2014, a CT of Kendra's head revealed a 1.9 x 1.8cm calcified mass in her sella consistent with a pituitary adenoma/tumor.

53.     On July 9, 2014, given the tumor on Kendra's head CT and history of amenorrhea, Richard Sullivan, M.D., the ED physician, ordered an outpatient brain MRI and referred Kendra to a neurosurgeon and endocrinologist.

54.     On September 25, 2014, unable to procure an appointment for Kendra with a

neurosurgeon or endocrinologist because of a lack of insurance, Kendra's mother called HCHC and informed Dr. Peduzzi that Kendra was having severe headaches and was recently diagnosed with a possible pituitary tumor on CT, but because Kendra had no insurance she was unable to procure an appointment with doctors.

55.     On November 6, 2014, Kendra's mother called HCHC and informed a nurse that she had been unable to get insurance or social security disability for Kendra and wanted to speak to David Bytnar about insurance options for Kendra under the Affordable Care Act.

56.     On November 19, 2014, after obtaining insurance through Medicaid, Kendra was seen at HCHC by Lorraine Reiser, CRNP for follow up of her pituitary tumor.

57.     On November 19, 2014, Kendra advised CRNP Reiser that she had had secondary amenorrhea since the age of 13.

58.     On November 19, 2014, CRNP Reiser's diagnoses on Kendra included anxiety and depression, visual disturbances, chronic headaches, secondary amenorrhea, nipple discharge, and other anterior pituitary hyperfunction.

59.     On November 19, 2014; CRNP Reiser recommended that Kendra needed counseling for behavioral issues.

60.     On November 19, 2014, Kendra's prolactin was elevated at 40.4ng/ml.

61.     On December 15, 2014, Kendra was seen by Joanna Fong-Isariyawongse, M.D., a neurologist, for debilitating headaches and was noted to have a history of elevated prolactin with amenorrhea and galactorrhea and pituitary mass on CT for which Dr. Fong-Isariyawongse ordered MRI of Kendra's pituitary.

62.     On January 23, 2015, Kendra underwent MRI of the pituitary at JRMC Diagnostic Services in Pittsburgh that revealed a 3.2 x 2.3 x 2.3cm pituitary mass elevating the optic chiasm.

11

63.     On February 17, 2015, Kendra was evaluated and examined by David Jho, M.D., Ph.D., a neurosurgeon, who documented that Kendra had a history of secondary amenorrhea since age 13, galactorrhea since age 14, history of elevated prolactin levels, chronic headaches with nausea for years, and visual problems primarily in her left eye.

64.     On February 17, 2015, Dr. Jho identified left-sided visual field deficits and diagnosed Kendra with a pituitary macroadenoma with suprasellar extension and compression of the optic chiasm.

65.     On February 20, 2015, Kendra was evaluated and examined by Ellen B. Mitchell, M.D., a Neuro-Ophthalmologist, who documented that Kendra had a history and findings compatible with long-standing chiasmal compression with bilateral asymmetric vision loss, left greater than right, for which the prognosis for recovery of vision in Kendra's left eye was guarded.

66.     On February 20, 2015, Kendra presented to Allegheny General Hospital's Emergency Department by ambulance with a severe headache, rated 10/10, radiating down her neck with a known history of brain tumor for which she was evaluated by Dr. Jho and treated with Fentanyl, a narcotic, and Decadron, a steroid.

67.     On February 20, 2015, Kendra underwent a CT of her head that showed a 2.5cm pituitary tumor with suprasellar extension and calcified rims consistent with a slow-growing, long-standing lesion without acute changes.

68.     On February 26, 2015, Dr. Jho evaluated Kendra in his office and diagnosed her with a slow-growing, non-functioning pituitary macroadenoma with supraseller extension compressing the optic chiasm and causing loss of vision with panhypopituitarism for which he scheduled her for transphenoidal surgical resection in hopes of preventing further vision loss.

Dr. Jho further noted that the long-standing compression with associated panhypopituitarism was not expected to improve since it had been in process over several years.

69.     On February 26, 2015, Kendra was evaluated and examined by Ines Donangelo, M.D., an Endocrinologist, who diagnosed Kendra with central hypocortisolism, central hypothyroidism, central hypogonadism, and Growth Hormone deficiency.

70.     On March 11, 2015, Dr. Jho performed an endoscopic endonasal transphenoidal surgical resection of Kendra's pituitary tumor without complications.

71.     Following the March 11, 2015 transphenoidal surgery by Dr. Jho, Kendra never regained vision in her left eye and is permanently blind in that eye.

72.     Following the March 11, 2015 surgery, Kendra began having grand mal seizures that occurred up to four times per day, resulting in significant physical disability and pain.

73.     Subsequent to the March 11, 2015 surgery, Kendra's galactorrhea and severe headaches resolved.

74.     On July 27-28, 2015, CT and MRI of Kendra's head and brain revealed a calcified rim around the sella caused by the prior tumor's chronic, long-standing status that was filling up with fluid.

75.     On January 7, 2016, MRI of Kendra's pituitary revealed a 3.4 x 2.4 x 2.1cm cystic suprasellar mass.

76.     On February 3, 2016, because the recurrent suprasellar cystic mass was symptomatic and could put Kendra's optic chiasm at risk of compression and result in the loss of vision in her right eye, Dr. Jho performed transphenoidal surgery with drainage of Kendra's suprasellar mass.

77.     Currently, Dr. Jho plans to have Kendra's sella further treated with radiation

13

therapy to reduce the risk of recurrent cyst formation that could cause Kendra to lose vision in her right eye.

78.    Currently, Dr. Donangelo is treating Kendra with hydrocortisone and thyroid replacement and plans to start Kendra on Growth Hormone and Estrogen.

79.    Currently, Kendra is being treated with Dilantin for grand mal seizures.

80.    As a direct and proximate cause of Defendants' negligence, as specified at length herein, Kendra Arista sustained the following injuries:

    a.    Panhypopituitarism;

    b.    Left eye blindness;

    c.    Increased risk of losing vision in right eye;

    d.    Loss of smell (anosmia);

    e.    Central hypothyroidism;

    f.    Vitamin D Deficiency;

    g.    Diabetes insipidus;

    h.    Severe headaches;

    i.    Seizure disorder;

    j.    Need for quad-cane assistance caused by seizures;

    k.    Recurrent suprasellar lesion;

    l.    Arrest of puberty;

    m.    Arrest of growth;

    n.    Need for lifelong treatment with multiple medications and related side effects, including but not limited to depression, mood swings, suicidal ideation, hirsutism, masculinizing features;

o.  Need for additional brain/pituitary surgeries;

p.  Likely need for radiation therapy;

q.  Increased risk of medical complications caused by panhypopituitarism, including but not limited to osteoporis, obesity, elevated cholesterol, cardiovascular disease, metabolic syndrome, psychologic illness, estrogen deficiency, and infertility;

r.  Anxiety;

s.  Depression;

t.  Fear and fright;

u.  Panic attacks;

v.  Pain and suffering;

w.  Disfigurement and scarring;

x.  Loss of opportunity for cure;

y.  Past and future medical expenses;

z.  Past and future physical pain and suffering;

aa. Past and future mental anguish;

bb. Past and future embarrassment;

cc. Past and future humiliation;

dd. Past and future loss of life's pleasures;

ee. Loss of earnings; and

ff.  Economic and financial damages.

81.     The injuries of Kendra Arista, as described herein, were caused solely and wholly by reason of all defendants' negligence and were not caused or contributed thereto by any action or inaction of Plaintiffs.

**COUNT I – NEGLIGENCE**
**PLAINTIFFS v. GINA SUCATO, M.D., CHILDREN'S HOSPITAL OF PITTSBURGH**
**OF UPMC, UNIVERSITY OF PITTSBURGH PHYSICIANS, AND**
**UPMC HEALTH SYSTEM**

82.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

83.     The negligent acts and omissions of Dr. Sucato, and derivatively of CHP, UPP, and UPMC, consist of one or more of the following:

a)      Failure to appropriately evaluate Kendra Arista's secondary amenorrhea;

b)      Failure to appropriately evaluate Kendra Arista's elevated prolactin levels;

c)      Failure to appropriately evaluate Kendra Arista for galactorrhea;

d)      Failure to document whether Kendra Arista had galactorrhea;

e)      Failure to appropriately evaluate Kendra Arista's elevated ESR;

f)      Failure to perform an adequate history and physical exam on Kendra Arista;

g)      Failure to perform a more detailed physical examination on Kendra Arista given her clinical history, specifically failing to perform breast and visual field exams;

h)      Failure to perform a breast exam and/or document Kendra Arista's galactorrhea on exam;

16

    i)      Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

    j)      Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea for several years with elevated prolactin levels and galactorrhea was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

    k)      Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea for several years with elevated prolactin levels and elevated ESR was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

    l)      Failure to order radiologic imaging of Kendra Arista's pituitary;

    m)      Failure to rule out a pituitary adenoma/tumor on Kendra Arista;

    n)      Failure to include pituitary adenoma/tumor in Kendra Arista's differential diagnosis;

    o)      Failure to rule out pituitary adenoma/tumor as the cause of Kendra Arista's secondary amenorrhea and elevated prolactin levels;

    p)      Inappropriately attributing Kendra Arista's secondary amenorrhea to weight loss and/or psychosomatic illness;

    q)      Inappropriately attributing Kendra Arista's elevated prolactin levels to psychosomatic illness;

    r)      Inappropriately attributing Kendra Arista's elevated prolactin levels and secondary amenorrhea to psychosomatic illness and/or stress and/or her history without ruling out a pituitary/brain tumor;

s)      Inappropriately advising Kendra Arista and her mother that Kendra's elevated prolactin levels were not of concern;

t)      Inappropriately advising Kendra Arista and her mother that Kendra's elevated prolactin levels were caused by psychosomatic illness;

u)      Inappropriately making a presumptive diagnosis of weight loss and/or psychosomatic disorder on Kendra Arista prior to ruling out a pituitary adenoma/tumor;

v)      Failure to adequately communicate with Kendra Arista's physicians at HCHC;

w)      Failure to adequately supervise Dr. Kazmerski;

x)      Failure to adequately supervise the nursing and ancillary staff involved in Kendra Arista's care and follow up;

y)      Failure to contact Kendra Arista for follow up subsequent to 2/27/12;

z)      Failure to refer Kendra Arista to an endocrinologist, gynecologist or other subspecialist to evaluate her hyperprolactinemia;

aa)     Failure to advise Kendra Arista and her mother that elevated prolactin levels can be caused by a pituitary/brain tumor;

bb)     Failure to advise Kendra Arista and her mother that a pituitary/brain tumor needed to be ruled out;

cc)     Failure to advise Kendra Arista and her mother of the need for additional follow up because Kendra could have a pituitary/brain tumor;

dd)     Failure to advise Kendra Arista and her mother that Kendra's workup was incomplete and a pituitary/brain tumor had not been ruled out;

18

ee)     Failure to advise Kendra Arista and her mother that even if Kendra's elevated prolactin levels could be caused by psychosomatic illness or weight loss, a pituitary/brain tumor needed to be ruled out.

84.     The negligence of Dr. Sucato, as set forth herein, was a substantial contributing factor causing the injuries and damages suffered by Kendra Arista.

85.     As a direct and proximate result of the negligence and carelessness of Dr. Sucato, and derivatively of CHP, UPP, and UPMC, Kendra Arista suffered catastrophic injuries and damages as set forth above.

COUNT II – NEGLIGENCE
PLAINTIFFS v. ESTHER M. NGARE, M.D.
AND HILLTOP COMMUNITY HEALTHCARE CENTER

86.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

87.     The negligent acts and omissions of Dr. Ngare, and derivatively of HCHC, consist of one or more of the following:

a)     Failure to appropriately evaluate Kendra Arista's secondary amenorrhea;

b)     Failure to appropriately evaluate Kendra Arista's elevated prolactin levels;

c)     Failure to appropriately evaluate Kendra Arista for galactorrhea;

d)     Failure to document whether Kendra Arista had galactorrhea;

e)     Failure to appropriately evaluate Kendra Arista's elevated ESR;

f)     Failure to perform an adequate history and physical exam on Kendra Arista;

19

g) Failure to perform a more detailed physical examination on Kendra Arista given her clinical history, specifically failing to perform breast and visual field exams;

h) Failure to perform a breast exam and/or document Kendra Arista's galactorrhea on exam;

i) Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

j) Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels and galactorrhea was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

k) Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels and elevated ESR was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

l) Failure to order radiologic imaging of Kendra Arista's pituitary;

m) Failure to rule out a pituitary adenoma/tumor on Kendra Arista;

n) Failure to include pituitary adenoma/tumor in Kendra Arista's differential diagnosis;

o) Failure to rule out pituitary adenoma/tumor as the cause of Kendra Arista's secondary amenorrhea and elevated prolactin levels;

p) Failure to refer Kendra Arista back to the CHP Adolescent Medicine Clinic, Dr. Sucato or to an endocrinologist, gynecologist or other subspecialist to evaluate and treat Kendra's hyperprolactinemia and secondary amenorrhea;

20

q)      Failure to order a repeat prolactin level in September 2013;

r)      Failure to adequately review Kendra Arista's medical record when seeing her for a physical exam in 2013;

s)      Failing to recognize that Kendra Arista had elevated prolactin levels;

t)      Failure to advise Kendra Arista and her mother that elevated prolactin levels can be caused by a pituitary/brain tumor;

u)      Failure to advise Kendra Arista and her mother that a pituitary/brain tumor needed to be ruled out;

v)      Failure to advise Kendra Arista and her mother of the need for additional follow up because Kendra could have a pituitary/brain tumor;

w)      Failure to advise Kendra Arista and her mother that Kendra's workup was incomplete and a pituitary/brain tumor had not been ruled out;

x)      Failure to advise Kendra Arista and her mother that even if Kendra's elevated prolactin levels could be caused by psychosomatic illness, a pituitary/brain tumor needed to be ruled out.

88.      The negligence of Dr. Ngare, as set forth herein, was a substantial contributing factor causing the injuries and damages suffered by Kendra Arista.

89.      As a direct and proximate result of the negligence and carelessness of Dr. Ngare, and derivatively of HCHC, Kendra Arista suffered catastrophic injuries and damages as set forth above.

**COUNT III – NEGLIGENCE**
**PLAINTIFFS v. AMY G. NEVIN, M.D. AND**
**HILLTOP COMMUNITY HEALTHCARE CENTER**

90.      The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

21

91.     The negligent acts and omissions of Dr.Nevin, and derivatively of HCHC, consist of one or more of the following:

a)     Failure to appropriately evaluate Kendra Arista's secondary amenorrhea;

b)     Failure to appropriately evaluate Kendra Arista's elevated prolactin levels;

c)     Failure to appropriately evaluate Kendra Arista for galactorrhea;

d)     Failure to document whether Kendra Arista had galactorrhea;

e)     Failure to appropriately evaluate Kendra Arista's elevated ESR;

f)     Failure to perform an adequate history and physical exam on Kendra Arista;

g)     Failure to perform a more detailed physical examination on Kendra Arista given her clinical history, specifically failing to perform breast and visual field exams;

h)     Failure to perform a breast exam and/or document Kendra Arista's galactorrhea on exam;

i)     Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

j)     Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels and galactorrhea was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

22

k)      Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels and elevated ESR was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

l)      Failure to order radiologic imaging of Kendra Arista's pituitary;

m)      Failure to rule out a pituitary adenoma/tumor on Kendra Arista;

n)      Failure to include pituitary adenoma/tumor in Kendra Arista's differential diagnosis;

o)      Failure to rule out pituitary adenoma/tumor as the cause of Kendra Arista's secondary amenorrhea and elevated prolactin levels;

p)      Failure to appropriately communicate with Dr. Sucato or the CHP Adolescent Medicine Clinic to ensure that a pituitary adenoma/tumor had been ruled out on Kendra Arista;

q)      Failure to advise Kendra Arista and her mother that elevated prolactin levels can be caused by a pituitary/brain tumor;

r)      Failure to advise Kendra Arista and her mother that a pituitary/brain tumor needed to be ruled out;

s)      Failure to advise Kendra Arista and her mother of the need for additional follow up because Kendra could have a pituitary/brain tumor;

t)      Failure to advise Kendra Arista and her mother that Kendra's workup was incomplete and a pituitary/brain tumor had not been ruled out;

u)      Failure to advise Kendra Arista and her mother that even if Kendra's elevated prolactin levels could be caused by psychosomatic illness, a pituitary/brain tumor needed to be ruled out;

v)      Failure to appropriately communicate with the HCHC nursing staff and ancillary staff, including Nurse Evans, regarding the need to follow up with and/or contact Kendra Arista for her elevated prolactin levels.

92.     The negligence of Dr. Nevin, as set forth herein, was a substantial contributing factor causing the injuries and damages suffered by Kendra Arista.

93.     As a direct and proximate result of the negligence and carelessness of Dr. Nevin, and derivatively of HCHC, Kendra Arista suffered catastrophic injuries and damages as set forth above.

**COUNT IV – NEGLIGENCE**
**PLAINTIFFS v. TRINA PEDUZZI, M.D.**
**AND HILLTOP COMMUNITY HEALTHCARE CENTER**

94.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

95.     The negligent acts and omissions of Dr. Peduzzi, and derivatively of HCHC, consist of one or more of the following:

a)      Failure to appropriately evaluate Kendra Arista's secondary amenorrhea;

b)      Failure to appropriately evaluate Kendra Arista's elevated prolactin levels;

c)      Failure to appropriately evaluate Kendra Arista for galactorrhea;

d)      Failure to document whether Kendra Arista had galactorrhea;

e)      Failure to appropriately evaluate Kendra Arista's elevated ESR;

f)      Failure to perform an adequate history and physical exam on Kendra Arista;

24

g)      Failure to perform a more detailed physical examination on Kendra Arista given her clinical history, specifically failing to perform breast and visual field exams;

h)      Failure to perform a breast exam and/or document Kendra Arista's galactorrhea on exam;

i)      Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

j)      Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels and galactorrhea was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

k)      Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels and elevated ESR was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

l)      Failure to order radiologic imaging of Kendra Arista's pituitary;

m)      Failure to rule out a pituitary adenoma/tumor on Kendra Arista;

n)      Failure to include pituitary adenoma/tumor in Kendra Arista's differential diagnosis;

o)      Failure to rule out pituitary adenoma/tumor as the cause of Kendra Arista's secondary amenorrhea and elevated prolactin levels;

p)      Failure to appropriately communicate with Dr. Sucato or the CHP Adolescent Medicine Clinic to ensure that a pituitary adenoma/tumor had been ruled out on Kendra Arista;

25

q)      Failure to advise Kendra Arista and her mother that elevated prolactin levels can be caused by a pituitary/brain tumor;

r)      Failure to advise Kendra Arista and her mother that a pituitary/brain tumor needed to be ruled out;

s)      Failure to advise Kendra Arista and her mother of the need for additional follow up because Kendra could have a pituitary/brain tumor;

t)      Failure to advise Kendra Arista and her mother that Kendra's workup was incomplete and a pituitary/brain tumor had not been ruled out;

u)      Failure to advise Kendra Arista and her mother that even if Kendra's elevated prolactin levels could be caused by psychosomatic illness, a pituitary/brain tumor needed to be ruled out;

v)      Failure to appropriately communicate with the HCHC nursing staff and ancillary staff, including Nurse Evans, regarding the need to follow up with and/or contact Kendra Arista for her elevated prolactin levels.

96.     The negligence of Dr. Peduzzi, as set forth herein, was a substantial contributing factor causing the injuries and damages suffered by Kendra Arista.

97.     As a direct and proximate result of the negligence and carelessness of Dr. Peduzzi, and derivatively of HCHC, Kendra Arista suffered catastrophic injuries and damages as set forth above.

26

WHEREFORE, Plaintiffs, Kendra Arista and Rachel Boris, demand judgment against all defendants, individually, jointly, severally, or in the alternative, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) and prevailing arbitration limits, exclusive of pre-judgment interest and post-judgment interest and costs.

Respectfully submitted,

KLINE & SPECTER
A PROFESSIONAL CORPORATION

Dated: 6/22/16

Thomas R. Kline, Esquire
Dominic C. Guerrini, Esquire
Mark S. Polin, Esquire
1525 Locust Street
The Nineteenth Floor
Philadelphia, PA 19102
(215) 772-1000
*Attorneys for Plaintiffs*

27

## VERIFICATION

I, Kendra Arista, plaintiff in this civil action, hereby verify that the within Civil Action Complaint is based on first-hand information and on information furnished to my counsel and obtained by them in the course of their investigation of this lawsuit and the facts involved.  The language of the document is that of counsel and not my own.  To the extent that the contents of the document are based on information furnished to counsel and obtained by them during the course of this lawsuit and their investigation of the facts giving rise to this lawsuit, I have relied upon counsel in taking this verification.  All statements are founded upon reasonable belief.  This verification is made subject to the penalties imposed by 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

_Kendra L. Arista_
KENDRA ARISTA

6-20-2016
DATE

## VERIFICATION

I, Rachel Boris, plaintiff in this civil action, hereby verify that the within Civil Action Complaint is based on first-hand information and on information furnished to my counsel and obtained by them in the course of their investigation of this lawsuit and the facts involved. The language of the document is that of counsel and not my own. To the extent that the contents of the document are based on information furnished to counsel and obtained by them during the course of this lawsuit and their investigation of the facts giving rise to this lawsuit, I have relied upon counsel in taking this verification. All statements are founded upon reasonable belief. This verification is made subject to the penalties imposed by 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

_Rachel L Boris_
RACHEL BORIS

6-20-2016
DATE

KLINE & SPECTER
A Professional Corporation

By:  THOMAS R. KLINE, ESQUIRE
     DOMINIC C. GUERRINI, ESQUIRE
     MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com
dominic.guerrini@klinespecter.com                    *Attorneys for Plaintiffs*
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (facsimile)

| | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS<br><br>                    Plaintiffs<br><br>                    v.<br><br>GINA SUCATO, M.D.; CHILDREN'S<br>HOSPITAL OF PITTSBURGH OF UPMC;<br>UNIVERSITY OF PITTSBURGH<br>PHYSICIANS; UPMC HEALTH SYSTEM;<br>ESTHER M. NGARE, M.D.; AMY G.<br>NEVIN, M.D.; TRINA PEDUZZI, M.D.;<br>AND HILLTOP COMMUNITY<br>HEALTHCARE CENTER.<br><br>                    Defendants | COURT OF COMMON PLEAS<br>ALLEGHENY COUNTY<br><br><br>JURY TRIAL DEMANDED<br><br>NO.<br><br><br>CIVIL ACTION -<br>MEDICAL PROFESSIONAL<br>LIABILITY ACTION |

## CERTIFICATE OF MERIT AS TO GINA SUCATO, M.D.

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐  An appropriate licensed professional has supplied a written statement to the undersigned

that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by

this defendant in the treatment, practice or work that is the subject of the complaint, fell

outside acceptable professional standards and that such conduct was a cause in bringing

about the harm;

OR

☐    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐    the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: 6/17/16

MARK S. POLIN, ESQUIRE

2

**KLINE & SPECTER**
A Professional Corporation

By:  THOMAS R. KLINE, ESQUIRE
     DOMINIC C. GUERRINI, ESQUIRE
     MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com
dominic.guerrini@klinespecter.com
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (facsimile)

*Attorneys for Plaintiffs*

| | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS<br>                Plaintiffs<br><br>     v.<br><br>GINA SUCATO, M.D.; CHILDREN'S<br>HOSPITAL OF PITTSBURGH OF UPMC;<br>UNIVERSITY OF PITTSBURGH<br>PHYSICIANS; UPMC HEALTH SYSTEM;<br>ESTHER M. NGARE, M.D.; AMY G.<br>NEVIN, M.D.; TRINA PEDUZZI, M.D.;<br>AND HILLTOP COMMUNITY<br>HEALTHCARE CENTER.<br><br>                Defendants | COURT OF COMMON PLEAS<br>ALLEGHENY COUNTY<br><br><br>JURY TRIAL DEMANDED<br><br>NO.<br><br><br>CIVIL ACTION -<br>MEDICAL PROFESSIONAL<br>LIABILITY ACTION |

## CERTIFICATE OF MERIT AS TO CHILDREN'S HOSPITAL OF PITTSBURGH OF UPMC

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐    An appropriate licensed professional has supplied a written statement to the undersigned that

there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this

defendant (corporate negligence) in the treatment, practice or work that is the subject of the

complaint, fell outside acceptable professional standards and that such conduct was a cause in

bringing about the harm;

OR

■ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

■ the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: _6/17/16_

MARK S. POLIN, ESQUIRE

2

**KLINE & SPECTER**
A Professional Corporation

By:  THOMAS R. KLINE, ESQUIRE
     DOMINIC C. GUERRINI, ESQUIRE
     MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com                          *Attorneys for Plaintiffs*
dominic.guerrini@klinespecter.com
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (facsimile)

| | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS<br>**Plaintiffs**<br><br>v.<br><br>GINA SUCATO, M.D.; CHILDREN'S<br>HOSPITAL OF PITTSBURGH OF UPMC;<br>UNIVERSITY OF PITTSBURGH<br>PHYSICIANS; UPMC HEALTH SYSTEM;<br>ESTHER M. NGARE, M.D.; AMY G.<br>NEVIN, M.D.; TRINA PEDUZZI, M.D.;<br>AND HILLTOP COMMUNITY<br>HEALTHCARE CENTER.<br><br>**Defendants** | COURT OF COMMON PLEAS<br>ALLEGHENY COUNTY<br><br><br>JURY TRIAL DEMANDED<br><br>NO.<br><br><br>CIVIL ACTION -<br>MEDICAL PROFESSIONAL<br>LIABILITY ACTION |

## CERTIFICATE OF MERIT AS TO UNIVERSITY OF PITTSBURGH PHYSICIANS

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant (corporate negligence) in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☒ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☒ the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: _6/17/16_

MARK S. POLIN, ESQUIRE

2

**KLINE & SPECTER**
A Professional Corporation

By:  THOMAS R. KLINE, ESQUIRE
     DOMINIC C. GUERRINI, ESQUIRE
     MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com
dominic.guerrini@klinespecter.com
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (facsimile)

*Attorneys for Plaintiffs*

| | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS<br>                               Plaintiffs<br><br>                v.<br><br>GINA SUCATO, M.D.; CHILDREN'S<br>HOSPITAL OF PITTSBURGH OF UPMC;<br>UNIVERSITY OF PITTSBURGH<br>PHYSICIANS; UPMC HEALTH SYSTEM;<br>ESTHER M. NGARE, M.D.; AMY G.<br>NEVIN, M.D.; TRINA PEDUZZI, M.D.;<br>AND HILLTOP COMMUNITY<br>HEALTHCARE CENTER.<br><br>                               Defendants | COURT OF COMMON PLEAS<br>ALLEGHENY COUNTY<br><br><br>JURY TRIAL DEMANDED<br><br>NO.<br><br><br><br>CIVIL ACTION -<br>MEDICAL PROFESSIONAL<br>LIABILITY ACTION |

### CERTIFICATE OF MERIT AS TO UPMC HEALTH SYSTEM

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐     An appropriate licensed professional has supplied a written statement to the undersigned that

there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this

defendant (corporate negligence) in the treatment, practice or work that is the subject of the

complaint, fell outside acceptable professional standards and that such conduct was a cause in

bringing about the harm;

OR

☑ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☑ the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: 6/17/16

MARK S. POLIN, ESQUIRE

2

**KLINE & SPECTER**
A Professional Corporation

By: THOMAS R. KLINE, ESQUIRE
     DOMINIC C. GUERRINI, ESQUIRE
     MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com
dominic.guerrini@klinespecter.com
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (facsimile)

*Attorneys for Plaintiffs*

| | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS<br>                Plaintiffs<br><br>      v.<br><br>GINA SUCATO, M.D.; CHILDREN'S<br>HOSPITAL OF PITTSBURGH OF UPMC;<br>UNIVERSITY OF PITTSBURGH<br>PHYSICIANS; UPMC HEALTH SYSTEM;<br>ESTHER M. NGARE, M.D.; AMY G.<br>NEVIN, M.D.; TRINA PEDUZZI, M.D.;<br>AND HILLTOP COMMUNITY<br>HEALTHCARE CENTER.<br><br>                Defendants | COURT OF COMMON PLEAS<br>ALLEGHENY COUNTY<br><br><br>JURY TRIAL DEMANDED<br><br>NO.<br><br><br>CIVIL ACTION -<br>MEDICAL PROFESSIONAL<br>LIABILITY ACTION |

<u>CERTIFICATE OF MERIT AS TO ESTHER M. NGARE, M.D.</u>

    I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☒    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

    OR

☐   An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐   the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: 6/17/16

MARK S. POLIN, ESQUIRE

2

**KLINE & SPECTER**
A Professional Corporation

By:  THOMAS R. KLINE, ESQUIRE
      DOMINIC C. GUERRINI, ESQUIRE
      MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com
dominic.guerrini@klinespecter.com
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (facsimile)

*Attorneys for Plaintiffs*

| | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS<br>          Plaintiffs<br><br>      v.<br><br>GINA SUCATO, M.D.; CHILDREN'S<br>HOSPITAL OF PITTSBURGH OF UPMC;<br>UNIVERSITY OF PITTSBURGH<br>PHYSICIANS; UPMC HEALTH SYSTEM;<br>ESTHER M. NGARE, M.D.; AMY G.<br>NEVIN, M.D.; TRINA PEDUZZI, M.D.;<br>AND HILLTOP COMMUNITY<br>HEALTHCARE CENTER.<br>          Defendants | COURT OF COMMON PLEAS<br>ALLEGHENY COUNTY<br><br><br>JURY TRIAL DEMANDED<br><br>NO.<br><br><br>CIVIL ACTION -<br>MEDICAL PROFESSIONAL<br>LIABILITY ACTION |

<u>CERTIFICATE OF MERIT AS TO AMY G. NEVIN, M.D.</u>

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☒ An appropriate licensed professional has supplied a written statement to the undersigned
that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by
this defendant in the treatment, practice or work that is the subject of the complaint, fell
outside acceptable professional standards and that such conduct was a cause in bringing
about the harm;

OR

☐ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: _6/17/16_

MARK S. POLIN, ESQUIRE

2

**KLINE & SPECTER**
A Professional Corporation

By:  THOMAS R. KLINE, ESQUIRE
DOMINIC C. GUERRINI, ESQUIRE
MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com
dominic.guerrini@klinespecter.com
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (facsimile)

*Attorneys for Plaintiffs*

---

| | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS<br>                                                  Plaintiffs<br><br>                            v.<br><br>GINA SUCATO, M.D.; CHILDREN'S<br>HOSPITAL OF PITTSBURGH OF UPMC;<br>UNIVERSITY OF PITTSBURGH<br>PHYSICIANS; UPMC HEALTH SYSTEM;<br>ESTHER M. NGARE, M.D.; AMY G.<br>NEVIN, M.D.; TRINA PEDUZZI, M.D.;<br>AND HILLTOP COMMUNITY<br>HEALTHCARE CENTER.<br><br>                                                  Defendants | COURT OF COMMON PLEAS<br>ALLEGHENY COUNTY<br><br><br>JURY TRIAL DEMANDED<br><br>NO.<br><br><br>CIVIL ACTION -<br>MEDICAL PROFESSIONAL<br>LIABILITY ACTION |

---

## CERTIFICATE OF MERIT AS TO TRINA PEDUZZI, M.D.

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

■   An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐   An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐   the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: _6/7/16_                                                  _____
                                                                      MARK S. POLIN, ESQUIRE

2

KLINE & SPECTER
A Professional Corporation
By:  THOMAS R. KLINE, ESQUIRE
     DOMINIC C. GUERRINI, ESQUIRE
     MARK S. POLIN, ESQUIRE
Identification Nos: 28895/91311/309999
tom.kline@klinespecter.com
dominic.guerrini@klinespecter.com
mark.polin@klinespecter.com
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (facsimile)

*Attorneys for Plaintiffs*

| | |
|---|---|
| KENDRA ARISTA AND RACHEL BORIS <br> Plaintiffs <br><br> v. <br><br> GINA SUCATO, M.D.; CHILDREN'S HOSPITAL OF PITTSBURGH OF UPMC; UNIVERSITY OF PITTSBURGH PHYSICIANS; UPMC HEALTH SYSTEM; ESTHER M. NGARE, M.D.; AMY G. NEVIN, M.D.; TRINA PEDUZZI, M.D.; AND HILLTOP COMMUNITY HEALTHCARE CENTER. <br><br> Defendants | COURT OF COMMON PLEAS <br> ALLEGHENY COUNTY <br><br> JURY TRIAL DEMANDED <br><br> NO. <br><br> CIVIL ACTION - <br> MEDICAL PROFESSIONAL <br> LIABILITY ACTION |

## CERTIFICATE OF MERIT AS TO HILLTOP COMMUNITY HEALTHCARE CENTER

I, MARK S. POLIN, ESQUIRE, certify pursuant to Pa.R.C.P. 1042.3 that:

☐   An appropriate licensed professional has supplied a written statement to the undersigned that

there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this

defendant (corporate negligence) in the treatment, practice or work that is the subject of the

complaint, fell outside acceptable professional standards and that such conduct was a cause in

bringing about the harm;

OR

☒ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☒ the claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harms;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Date: 6/7/16

MARK S. POLIN, ESQUIRE

2